**Scott James SNIDER, Plaintiff,**

v.

**CRIMSON ENTERPRISES, INC., a Georgia Corporation, and John Does 1–10, Defendants.**

**Civ. No. 90–00136 HMF.**

United States District Court, D. Hawaii.

April 1, 1991.

Randolph R. Slaton, Honolulu, Hawaii, for plaintiff Scott James Snider.

Gregory M. Sato, Torkildson, Katz, Jossem, Fonseca, Jaffe & Moore, Honolulu, Hawaii, for defendant Crimson Enterprises, Inc.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FONG, Chief Judge.

### INTRODUCTION

On January 7, 1991, the court held a hearing on the defendant's motion for summary judgment under Fed.R.Civ.P. 56 which was filed on October 12, 1990.[1] The plaintiff filed a memorandum in opposition on December 20, 1990 and the defendant filed a reply memorandum on December 31, 1990. After the hearing, the court requested additional briefing by the parties on the issue of Employee Retirement Income Security Act (ERISA) preemption of Hawaii law. Pursuant to that request, the plaintiff filed supplemental memoranda in opposition on February 28, 1991 and March 6, 1991. The defendant filed a supplemental memorandum in support of the motion for summary judgment on March 18, 1991.

### BACKGROUND

From approximately February 2, 1986 to July 31, 1986, defendant Crimson Enterprises, Inc. (Crimson), a Georgia corporation specializing in the repair and maintenance of federal military installations, performed work at the Kaneohe Marine Corps Air Station. On May 2, 1986, plaintiff Scott James Snider applied for and was given a job with Crimson. On July 4, 1986, Mr. Snider was paralyzed from the waist down in a non-work-related single-car accident.

Mr. Snider's father, Robert Snider, an insurance agent, held the power-of-attorney for Mr. Snider, and filed his son's medical insurance claims. After the statutory minimum benefits had been paid to Mr. Snider by his no-fault insurance carrier, his father filed a claim with Crimson's employee group health insurance carrier, Travellers Insurance Company (Travellers).

Crimson terminated Mr. Snider's employment on July 31, 1986 when it ceased performing work at the Kaneohe Marine Corps Air Station.

Crimson canceled its insurance plan with Travellers on November 28, 1986. Travellers continued to pay Mr. Snider's medical benefits until November 28, 1987 under its policy providing that it will pay benefits to a totally disabled beneficiary for one year from the date the benefits were to stop. Robert Snider claims that he did not learn of the cancellation of Crimson's group policy until December, 1987, when he called

---

[1] Although the motion is labeled a motion for summary judgment and the defendant stated it was bringing its motion under Fed.R.Civ.P. 56, the defendant repeatedly asks the court in its papers to "dismiss" the various counts against it brought by the plaintiff. The court takes the motion as one for summary judgment because it was officially brought as a motion for summary judgment and the parties' arguments revolve around the summary judgment standard. In addition, if the court looks at matters external to the pleadings in its decision, a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is treated as a motion for summary judgment under *Rosales v. United States,* 824 F.2d 799, 802 (9th Cir. 1987).

the company about unpaid medical bills and was informed that his son no longer had coverage, and that he received his first information regarding benefits and the "right" to convert to an individual policy on December 6, 1988 when he received the Summary Plan Description.

After the cancellation of the Travellers policy, Mr. Snider continued to receive health insurance benefits through Kaiser and Medicare. However, neither of these programs would cover physical therapy to the same extent as Travellers. The plaintiff could not afford physical therapy under these plans and had to discontinue treatment. He also had to discontinue four types of medication: Motrin, Darvon, Didronel and Dilantin. He alleges that as a result of the cessation of physical therapy and these medications he developed heterotopic ossification, a calcium build-up in his hips, and equinus in inversion, or curled toes.

The defendant, however, points the court to a letter from Dr. Gary L. Douglas who, after examination of the plaintiff, could not definitively identify the cause of the heterotopic ossification as being the cessation of the medicine or of the physical therapy which the plaintiff could no longer afford. Dr. Douglas stated in his letter that the cause and cure of heterotopic ossification is still unknown. Dr. Douglas did state, however, that the plaintiff's "lack of physical therapy could have accentuated the amount of equinus in inversion that has occurred and maybe could be accused of reducing the range of motion of his hips."

Under Traveller's master policy, a beneficiary may convert to an individual plan if his or her employment is terminated or he or she is no longer an eligible employee, and the group policy is still in force. The policy adds that "If your group health insurance stops because the policy ends you will not have the right to buy replacement coverage." The policy also states that if the beneficiary is covered by other insurance "the Travellers might limit the benefits of the individual policy.... In some cases, the Travellers could even refuse to give a policy." The conversion application

must also be made within thirty-one days of the date the coverage ended. Lastly, the master policy states that "in most cases the benefits will be limited to hospital and surgical benefits only. The benefit amounts will not always be the same as under the group policy."

*Hospital services* are defined in the policy as follows:

Room and Board
* Charges may be made for a ward or semi-private room or an intensive care unit. The full amount of these charges will be counted as Covered Expenses.
* Charges may be made for a private room. Charges up to the hospital's regular daily charge for a semi-private room will be counted as Covered Expenses.
Other Services and Supplies.

*Physician's or Surgeon's Services* are defined in the policy as follows:

Services for surgical procedures.
Also services for other medical care and treatment. These can be services such as hospital, office or home visits. These can also be emergency room treatment services.
Covered Expenses for these services are limited for certain Mental and Nervous Disorders. The limit is shown at the end of this section.

Further definitions are not given for either "Other Services and Supplies" or "other medical care and treatment." However, the definition of "Home Health Care After Hospital Confinement" does include up to 40 visits a year for physical therapy. It is not specified whether the home visits authorized under Physician's or Surgeon's Services are the same as those defined under the "Home Health Care After Hospital Confinement" section. Therefore, it is not clear from the policy whether or not the plaintiff would definitely be limited only to hospital and surgical services or whether or not if so limited he could still receive physical therapy.

The policy in the hands of the plaintiff and his father, being the Summary Plan Description, was not the master policy with all the details described hereinabove which was received December 6, 1988, well be-

yond the thirty-one day deadline for applying for individual plan conversion. The Summary Plan Description merely stated that conversion to an individual plan was possible and the employee should contact his or her employer for additional information. The plaintiff's major contention in this case is that the defendant had a duty to inform him of his rights of conversion from the group plan to an individual plan.

In Count I of the complaint, the plaintiff alleges breach of contract and breach of fiduciary duty. In Count II of the complaint, the plaintiff alleges breach of the covenant of good faith and fair dealing in the employer/employee relationship. In Count III of the complaint, the plaintiff alleges the negligent or intentional infliction of emotional distress. The defendant seeks summary judgment on all counts.

## APPLICABLE LAW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the non-moving party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. *But cf., id.,* 477 U.S. at 328, 106 S.Ct. at 2555–56 (White, J., concurring).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the movant's evidence at trial. *See T.W. Elec.,* 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Building Projects, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (1987), *citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1289 (9th Cir. 1987), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec.,* 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.*

Inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts which the judge is required to resolve in favor of the non-moving party. *Id.*

### DISCUSSION

I. *Breach of Contract and Fiduciary Duty*

ERISA, 29 U.S.C. § 1001 *et seq.*, "was passed by Congress to safeguard employees from the abuse and mismanagement of funds by establishing uniform procedural standards concerning reporting, disclosure, and fiduciary responsibility." *Morishige v. Spencecliff Corp.*, 720 F.Supp. 829 (D.Haw.1989). ERISA defines "employee welfare benefit plan" and "welfare plan" as follows:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or training programs, or day care centers, scholarship funds, or prepaid legal services....

29 U.S.C. § 1002(1)

29 U.S.C. § 1003(a) provides that subchapter I, Protection of Employee Benefit Rights, "shall apply to any employee benefit plan if it is established or maintained—(1) by any employer engaged in commerce or in any industry or activity affecting commerce...."

Thus, ERISA clearly covers a "plan ... established or maintained by an employer

... for the purpose of providing ... medical ... benefits," including the health insurance plan provided by the plaintiff's employer, Crimson Enterprises, Inc.

ERISA contains a broad preemption provision which states, in relevant part, as follows:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title....

29 U.S.C. § 1144(a).

The Supreme Court has given a broad interpretation to the issue of whether laws "relate to" any employee benefit plan. *Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990).

However, 29 U.S.C. § 1144(b)(5)(A) provides that the ERISA general preemption "shall not apply to the Hawaii Prepaid Health Care Act (Haw.Rev.Stat. 393–1 through 393–51)."

An *exception* to this Hawaii exception to the ERISA preemption is found in 29 U.S.C. § 1144(b)(5)(C) as follows:

Notwithstanding subparagraph (A), parts 1 and 4 of this subtitle, and the preceding sections of this part to the extent they govern matters which are governed by the provisions of such parts 1 and 4, shall supersede the Hawaii Prepaid Health Care Act (as in effect on or after January 14, 1983), but the Secretary may enter into cooperative arrangements under this paragraph and section 1136 of this title with officials of the State of Hawaii to assist them in effectuating the policies of provisions of such Act which are superseded by such parts 1 and 4 and the preceding sections of this part.[2]

**2.** The plaintiff submitted an affidavit of Orlando K. Watanabe, administrator of the Disability Compensation Division of the Department of Labor and Industrial Relations of the State of Hawaii, stating that such cooperative agreements had not been made and that his depart-

ment "relies on its own rules and regulations in administering Chapter 393, H.R.S., since these rules and regulations provide for effective administration of this Chapter as in effect on September 2, 1974." However, such cooperative agreements are not *required* under ERISA

Parts 1 and 4 of the same subtitle, referred to in the above exception are "Reporting and Disclosure" and "Fiduciary Responsibility" of Subtitle B, "Regulatory Provisions." Thus, the regulations in these two parts *are* applicable to Hawaii cases because they are exceptions to the general Hawaii exception to ERISA preemption.

The plaintiff alleges that the defendant failed to notify him of the plan's description, especially his conversion rights. ERISA, part 1 of Subtitle B, directly regulates the furnishing to plan participants of, among other things, a summary plan description in 29 U.S.C. § 1024(b). The plaintiff's claims for breach of contract and fiduciary duty are thus covered under ERISA and Hawaii law is thus preempted by ERISA under the above series of ERISA subsections.[3]

Thus, it is clear that because of the broad preemption provision of ERISA, its applicability to the group insurance plan at issue and the lack of any ERISA violation allegation in the complaint, the court must grant summary judgment on Count I of the complaint because the law under which it was brought is preempted by ERISA. This grant of summary judgment is without prejudice to any additional complaint the plaintiff may file in the future under ERISA.[4]

## II. *Breach of the Covenant of Good Faith and Fair Dealing*

■ There is no cause of action in Hawaii for the breach of a covenant of good faith and fair dealing in an employment contract. Both *Parnar* and *Kinoshita* state as follows regarding the covenant of good faith and fair dealing in termination cases:

> But to imply into each employment contract a duty to terminate in good faith would seem to subject each discharge to judicial incursions into the amorphous concept of bad faith. We are not persuaded that protection of employees requires such an intrusion on the employment relationship or such an imposition on the courts.

*Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 377, 652 P.2d 625 (1982); *Kinoshita v. Canadian Pacific Airlines, Ltd.*, 68 Haw. 594, 600, 724 P.2d 110 (1986).

Thus, the court grants the defendant's motion for summary judgment on Count II of the complaint alleging a breach of the covenant of good faith and fair dealing because the doctrine is not recognized as a cause of action under Hawaii law.

## III. *Negligent or Intentional Infliction of Emotional Distress*

■ The plaintiff alleged in its complaint that the defendant's "acts or omissions constitute the negligent or intentional infliction of emotional distress ..." The plaintiff's exclusive remedy for this claim is through workers' compensation because workers' compensation is the exclusive remedy for an accident or injury arising out of or suffered in the course of employment. *Costa Minors v. Flintkote Co.*, 42 Haw. 518, 530 (1956). The Hawaii Supreme Court has liberally construed the circumstances under which compensation may be granted.

*Royal State Insurance Co. v. Labor Board*, 53 Haw. 32, 487 P.2d 278 (1971) held that workers' compensation covers

---

whereas the parts 1 and 4 of subtitle B exception to the general preemption is a mandatory provision.

**3.** The parties cite the "savings" and "deemer" clauses of 29 U.S.C. § 1144. The "savings" clause, 29 U.S.C. § 1144(b)(2)(A), provides that state laws which "regulate insurance" are not preempted; the "deemer" clause, 29 U.S.C. § 1144(b)(2)(B), states that no employee benefit plans described in section 1003(a) "shall be deemed to be an insurance company." Taking the two clauses together, it is clear that the defendant is not to be treated as an insurance

company under Hawaii laws solely because of its employee benefits plan, as provided under the "deemer" clause.

**4.** Although Hawaii Prepaid Health Care Administrative Rule section 12–12–28 requires notice to employees of cancellation of all statutorily required insurance policies, the Rule is preempted by ERISA. An ERISA violation has not been alleged in the complaint; only contractual and fiduciary duties were alleged as being breached.

claims for mental injury. Lastly, other cases have held that workers' compensation preempted claims of mental distress arising out of termination of employment. *See e.g., Courtney v. Canyon TV Rental*, 899 F.2d 845, 851 (9th Cir.1990).

▪ Thus, the legal standard in Hawaii for workers' compensation coverage is that workers' compensation is the exclusive remedy for injuries arising out of employment. The focus is on "the injury's origin rather than the time and place of its manifestation" and "simply requires the finding of a causal connection between the injury and any incidents or conditions of employment." *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 648, 636 P.2d 721 (1981).

The linchpin of this argument is the causal connection between the alleged injury, the emotional distress, and the plaintiff's employment with the defendant. The plaintiff's emotional distress was caused by the cancellation of insurance without his knowledge and his inability to apply for conversion to an individual policy because the deadline had passed and he did not have enough information about the policy and procedures. His cessation of physical therapy and certain medication also resulted from no longer being covered under Travellers insurance, and he speculates that if he had been able to apply to convert to an individual policy, that application would have been granted and the policy may have included physical therapy coverage.

The fact that the plaintiff was insured by Travellers is a direct result of his employment with the defendant. The causal connection could not be clearer on this point. However, the injury arose from the cancellation of the policy and the lack of information about the cancellation and the conversion policy. The cancellation was not until November 28, 1986, and the coverage did not cease until November 28, 1987.

The injury clearly originated out of the insurance coverage, or lack thereof, and the insurance coverage is a result of the plaintiff's employment with the defendant. The termination of the insurance was done by the defendant, the plaintiff's employer. There is therefore a causal connection between the insurance coverage and the plaintiff's employment with the defendant. Because Hawaii case law liberally construes these causal connections, Hawaii workers' compensation definitely is the plaintiff's remedy for his emotional distress. Because workers' compensation is the exclusive remedy for employment-related injuries under *Costa Minors*, this court cannot grant relief to the plaintiff under his claim of negligent or intentional infliction of emotional distress. Thus, the court grants the defendant's motion for summary judgment on Count III of the plaintiff's complaint.

## IV. *Conspiracy*

Count IV of the complaint alleges a conspiracy among the defendants to deprive the plaintiff of his insurance benefits. The basis of this allegation contains the facts underlying Count I and as such is preempted by ERISA. *See Sorosky v. Burroughs Corp.*, 826 F.2d 794, 800 (9th Cir.1987). Thus, the court grants summary judgment on Count IV.[5]

## V. *Genuine Issues of Material Fact*

The plaintiff also argues against the motion for summary judgment by listing a number of allegedly disputed facts. He lists the facts as follows:

1. Whether Mr. Snider received any insurance information during his employment "so that he could plan his insurance coverage." The plaintiff denies receipt of any information during his employment.

2. When insurance coverage stopped. The summary plan provides that coverage stops on "the last day of the Insurance Month in which your employment ends." Mr. Snider's employment ended when Crimson left on July 31, 1986. However, his

---

**5.** Although the defendant did not explicitly seek summary judgment on Count IV in its moving papers, it styled its motion as one for summary judgment and not *partial* summary judgment, and it argued for summary judgment on Count IV in both the hearing on the motion and in subsequent filings with the court.

coverage must have extended for as long as the Crimson group plan, canceled on November 28, 1986, because the extra year total disability coverage did not end until November 28, 1987.

3. Whether Mr. Snider had knowledge that he could convert to an individual plan with Travellers.

4. Whether the defendant provided the plaintiff any "substantive information" prior to December 6, 1988.

5. Whether the Summary Plan Description was the first substantive information Mr. Snider "was able to obtain" from either the defendant or Travellers.

The plaintiff lists five issues in this case which he considers to be genuine issues of material fact. However, the only remaining issues in the case are legal questions and the allegedly disputed facts are irrelevant to both those legal issues. The factual issues listed by the plaintiff all involve the knowledge of the plaintiff of his insurance coverage at relevant times, as well as the status of the coverage in terms of its termination date. The plaintiff's knowledge and the actual termination date are irrelevant to the remaining issues in the case because both are purely legal questions.

The first issue remaining in the case is the question of whether or not the defendant owed the plaintiff a duty to notify him of the policy cancellation. The fact that such notice was not given is not disputed and the court has held that ERISA preempts the law under which the claim was alleged.

The second issue remaining in the case is whether or not workers' compensation is the plaintiff's exclusive remedy under Hawaii law. Again, there are no factual disputes relevant to this legal issue; only the law is in dispute. Although existence of any actual emotional distress inflicted by the defendant is probably a disputed fact, it is irrelevant to the legal issue of whether or not workers' compensation is the plaintiff's exclusive remedy under Hawaii law.

Accordingly, the court GRANTS the defendant's motion for summary judgment on Count I and IV without prejudice, and grants summary judgment on Counts II and III with prejudice.

IT IS SO ORDERED.