951 F.2d 359
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Anthony D. FRANKLIN, Plaintiff-Appellant,
v.
DELTA AIR LINES, INC., Defendant-Appellee.
 No. 90-16118.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 8, 1991.
Decided Dec. 19, 1991.
 
 Before ALARCON, D.W. NELSON and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In this diversity action, Anthony Franklin (Franklin) appeals from the final order of dismissal entered in this matter following the grant of the motion for summary judgment filed by Delta Air Lines, Inc. (Delta), and from the denial of his motion to amend the complaint. Franklin seeks reversal on the ground that there are material issues of fact in dispute regarding whether the termination of his employment constituted a breach of his employment contract as well as a violation of public policy and of Delta's implied duty of good faith and fair dealing. After an independent review of the record, we affirm because we conclude that the record shows that Franklin's employment was terminable at will, no violation of public policy has been demonstrated, and Hawaii law does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in employment agreements. We also conclude that the district court did not abuse its discretion in denying Franklin's motion to amend his complaint.
 
 DISCUSSION
 I. Contractual Claims
 A. Employment Contract
 
 3
 Franklin does not dispute the fact that his application for employment, and Delta's Standard Practices employee manual expressly provide that his employment was terminable at will. Franklin argues, however, that the Standard Practices manual gave him the right not to be terminated for alcoholism without giving him the opportunity to complete a rehabilitation program. Franklin contends that Delta's failure to adhere to the Standard Practices policies regarding alcohol rehabilitation was a violation of his employment contract.
 
 
 4
 We review an order granting summary judgment de novo. California Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987), cert. denied, 484 U.S. 1006 (1988). Because this is a diversity action we apply Hawaii law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Takahashi v. Loomis Armored Car Serv., 625 F.2d 314, 316 (9th Cir.1980).
 
 
 5
 In Kinoshita v. Canadian Pacific Airlines, 724 P.2d 110 (Haw.1986), the Hawaii Supreme Court held that a supervisory manual expressing an employer's policy can give rise to contractual rights in employees. Id. at 117-18 (citation omitted). Franklin's reliance on Kinoshita is misplaced. The Standard Practices manual contains the following language:
 
 
 6
 Just as all personnel have the right to resign their employment with Delta at any time and for any reason they choose, Delta has the right to terminate the employment relationship with any individual at any time if Delta concludes in its sole judgment that an individual is not meeting Delta standards. This right exists notwithstanding any examples of conduct or other statements contained in standard practice or any other statements of Delta's general policies....
 
 
 7
 (emphasis added).
 
 
 8
 In Courtney v. Canyon Television & Appliance Rental, 899 F.2d 845 (9th Cir.1990), we held that, under Hawaii law, Kinoshita's implied contract exception was inapplicable to cases in which the employee manual contained an express disclaimer preserving the "at-will" relationship and the employee has failed to present sufficient evidence to show that the employer's actions were not consistent with the disclaimer. Id. at 850. See also Morishige v. Spencecliff Corp., 720 F.Supp. 829, 835 (D.Haw.1989). Delta's Standard Practices unequivocally disclaim any intent to modify Delta's right to terminate an employee at will. In the absence of any evidence that Delta has treated its manual as a contract, the implied-in-fact contract rule announced in Kinoshita is inapplicable under the facts in this record.
 
 
 9
 B. Alleged Implied-in-Fact Contract Requiring Good Cause For Discharge
 
 
 10
 Franklin contends that he was not an at-will employee because he had been with Delta for 25 years. During this time he received periodic promotions and good annual evaluations, as well as letters encouraging him to remain with Delta.
 
 
 11
 The Hawaii courts have not yet determined whether a terminable at-will employment agreement can be altered by an employer's assurances of continued employment and lengthy service. Due to the absence of controlling state law, we must use our own judgment in predicting how the state's highest court would resolve the issue. Takahashi, 625 F.2d at 316. In making this prediction we may consider the laws of other jurisdictions, id., but we are "not free to engraft upon these state decisions, exceptions or modifications which have not been adopted by the state court." Pagdilao v. Maui Intercontinental Hotel, 703 F.Supp. 863, 867 (D.Haw.1988).
 
 
 12
 Other states have accorded some contractual significance to oral implied promises of continued employment. For example, in California:
 
 
 13
 [t]he existence of such implied promises is a question of fact for the jury to decide. In determining whether such promises exist, the jury must look to the entire relationship of the parties. Factors include, but are not limited to, the terms of the employment manual, the employer's personnel policies or practices, the longevity of plaintiff's service, acts or communications by the employer reflecting assurances of continued employment, and whether plaintiff has received consistent promotions or salary increases.
 
 
 14
 Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 776 (9th Cir.1990) (citations omitted); see also Foley v. Interactive Data Corp., 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373, 383-86 (1988). In Stancil v. Mergenthaler Linotype Co., 589 F.Supp. 78 (D.Haw.1984), the district court refused to adopt an implied-in-fact exception to Hawaii's at-will employment rule absent any indication that the Hawaii Supreme Court intended to do so. Id. at 83. We agree with Judge Fong's well-reasoned opinion. We also decline to create an exception to Hawaii's employment-at-will law to encompass such factors as implied verbal assurances and length of service.
 
 
 15
 C. Implied Covenant of Good Faith and Fair Dealing
 
 
 16
 Franklin contends that the district court erred in dismissing his claim that Delta breached an implied covenant of good faith and fair dealing. This contention is completely without merit. Hawaii law does not recognize a claim for breach of the implied covenant of good faith and fair dealing in employment agreements. See Parnar v. Americana Hotels, Inc., 652 P.2d 625, 629 (Haw.1982) (refusing to expand a wrongfully discharged employee's rights by imposing on an employer an implied duty to terminate in good faith); Kinoshita, 724 P.2d at 115 (noting that Parnar explicitly rejects the "bad faith" exception to the at-will employment doctrine).
 
 
 17
 II. Alleged Wrongful Termination in Violation of Public Policy
 
 
 18
 Under Hawaii law, an employer may discharge an employee without cause if there is no fixed term in the employment contract. Parnar, 652 P.2d at 627. Hawaii law creates an exception to this rule, however:
 
 
 19
 where [an employer's] discharge of an employee violates a clear mandate of public policy. In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy. However, courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.
 
 
 20
 Id. at 631 (footnote omitted). Relying primarily on the passages quoted above from Parnar, Franklin contends that his termination violated public policy in two separate ways.
 
 
 21
 A. Delta's Alleged Failure to Adhere to Company Policies
 
 
 22
 First, Franklin contends that Delta's alleged failure to adhere to its Standard Practices regarding alcohol rehabilitation, employee performance reviews, and appeal of labor disputes violated the rule set forth in Kinoshita, whereby employee manuals may create contractual rights in employees. 724 P.2d at 117. Franklin argues that Delta's disregard for its Standard Practices constitutes a violation of public policy that gives rise to tort liability. Franklin further asserts that Hawaii Leasing v. Klein, 698 P.2d 309 (Ct.App.Haw.1985), establishes a public policy that an employer is liable for a bad faith violation of the implied covenant of good faith and fair dealing. We disagree.
 
 
 23
 Franklin mistakenly interprets the language of Parnar to mean that every judicial decision that resolves a contract dispute between private parties also establishes a principle of public policy. Franklin has cited no authority to support this remarkable proposition.
 
 
 24
 While it is true that "prior judicial decisions" may establish public policy, the Hawaii Supreme court instructed in Parnar that "courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject." 652 P.2d at 631. Neither Kinoshita nor Hawaii Leasing purported to promulgate a doctrine of public policy applicable to at-will employment agreements between private sector employers and employees. In Kinoshita, the court held that representations of employer policies contained in an employment manual can, under certain circumstances, modify an otherwise at-will employment contract. 724 P.2d at 117. In Hawaii Leasing, the court held that, as a matter of law, it would imply a covenant of good faith and fair dealing in commercial contracts. 698 P.2d at 313-14. As noted above, however, the Hawaii Supreme Court has expressly refused to imply the good-faith condition to employment agreements. See Parnar, 652 P.2d at 629.
 
 
 25
 Our research revealed no case in which the Hawaii courts have defined the scope of the public policy exception to the at-will employment doctrine. The examples of violations of public policy set forth in Parnar involve the retaliatory discharge of an employee for pursuing a legal right or for reporting the commission of an illegal act by the employer. Id. at 630-31 & nn. 11-14. In Parnar, the court held that an employee could assert a claim for wrongful termination against her employer, where the employer allegedly fired her to prevent her from testifying about the employer's violation of antitrust laws. Id. at 631-32. In this context, the court noted, it was able to:
 
 
 26
 discern the relevant public policy from the antitrust laws. The notion that it is the purpose of those laws to protect the public interest in free and unrestrained competition is too well-established to require citation.
 
 
 27
 652 P.2d at 631. The court in Parnar cited Petermann v. International Brotherhood of Teamsters, 174 Cal.App.2d 184, 344 P.2d 25 (1959), as an example of the type of conduct encompassed by the public policy exception. Parnar, 652 P.2d at 630. In Petermann, the California Court of Appeal applied the public policy exception to an employee who was fired for refusing to commit perjury before a legislative committee. 344 P.2d at 26. In its decision, the California Court specifically noted that perjury was sufficiently "injurious to the public" to allow modification of the at-will employment rule. Id. at 27. Franklin has failed to demonstrate that he was fired because he refused to commit an illegal act, such as perjury, or for blowing the whistle on his employer. We are unwilling to extend Hawaii public policy to protect against all alleged breaches of contract.
 
 
 28
 B. Delta's Alleged Violation of Hawaii Liquor Law
 
 
 29
 Second, Franklin contends that Delta violated public policy by serving him liquor when he appeared to be intoxicated, in violation of Haw.Rev.Stat. § 281-78(b)(1)(B).
 
 
 30
 The uncontroverted evidence in this record demonstrates that Delta flight attendants stopped serving liquor to Franklin approximately forty-five minutes before his flight landed in Honolulu. Thus, no liquor was served to him within the territorial jurisdiction of Hawaii. Accordingly, Delta did not violate section 281-78(b)(1)(B).
 
 III. Denial of Leave to Amend The Complaint
 
 31
 The district court denied Franklin's motions for leave to amend his complaint on two separate occasions. First, the district court denied Franklin leave to amend his complaint to include new allegations that Delta (1) violated Hawaii's workers' compensation law (Haw.Rev.Stat. § 378-32(2)) and its anti-discrimination statute (Haw.Rev.Stat. § 378-2); (2) violated federal labor law regarding dispute resolution procedures (45 U.S.C. §§ 183, 184); (3) breached its duty under the Standard practices manual to enroll Franklin in an alcohol rehabilitation program, and to advise him of the manner in which violations of company policy are handled; and (4) illegally attempted to induce Franklin to resign by threatening him with the loss of his retirement benefits. The district court also denied Franklin's motion for leave to amend his complaint to include various breach of contract claims based on Delta's alleged failure to establish standards for employee behavior in its Standard Practices; its alleged failure to refer Franklin to the Director of Equal Opportunity; and Delta's alleged failure to conduct an annual review of Franklin's performance.
 
 
 32
 A magistrate also denied Franklin's motion for leave to amend his first amended complaint, which sought to add further public policy claims based on Delta's alleged violation of federal and state laws prohibiting the service of alcohol to an intoxicated individual.
 
 
 33
 The district court refused to allow Franklin to file his complaint because of undue delay, prejudice to Delta, and the futility of Franklin's claims. The magistrate denied Franklin's second motion to amend based on prejudice to Delta and futility. Franklin contends that the record does not demonstrate undue delay, prejudice, or futility.
 
 
 34
 We review a denial of a motion for leave to amend for abuse of discretion. Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.1989). We determine the propriety of a motion for leave to amend by reference to the following factors: (1) undue delay; (2) bad faith; (3) prejudice to the opposing party; (4) futility of amendment; (5) and whether plaintiff has previously amended his complaint. Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir.1990).
 
 
 35
 The district court did not abuse its discretion in concluding that there was undue delay which resulted in prejudice to Delta. The record shows that Franklin had knowledge of all his legal claims at the time he filed the original complaint. In addition, Franklin did not file his first motion for leave to amend until ten months after he filed his original complaint. "[A] district court does not 'abuse its discretion in denying a motion to amend a complaint ... when the movant presented no new facts but only "new theories" and "provided no satisfactory explanation for his failure to fully develop his contentions originally." ' " Id. at 374 (citations omitted) (ellipsis in original). Furthermore, Franklin waited until the "11th hour" to request amendment, thereby threatening Delta's entitlement to a near-term trial date. See McGlinchy v. Shell Chemical Co., 845 F.2d 802, 809 (9th Cir.1988).
 
 
 36
 The district court did not abuse its discretion in denying Franklin's proposed amendments on the grounds that they were futile, because none would have survived summary judgment analysis. Johnson v. American Airlines, Inc., 834 F.2d 721, 724 (9th Cir.1987).
 
 IV. Trial Court's Jurisdiction to Tax Costs
 
 37
 We reject Franklin's contention that the district court did not have jurisdiction to tax costs in favor of Delta. Although "the general rule is that jurisdiction over any matters involved in [an] appeal is immediately transferred from the district court to the court of appeals," United States v. Thorp, 655 F.2d 997, 998 (9th Cir.1981), this rule is not absolute. We have recognized an exception to that rule whereby the district court may retain jurisdiction to rule on ancillary matters, such as attorneys' fees and sanctions. See United Energy Owners v. United Energy Management, 837 F.2d 356, 358 (9th Cir.1988) (district court retained jurisdiction to impose sanctions while plaintiffs' appeal from judgment of dismissal was pending); Masalosalo v. Stonewall Ins. Co., 718 F.2d 955, 956 (9th Cir.1983) (district court retained jurisdiction to award attorneys' fees after the plaintiff filed a notice of appeal from the district court's decision on the merits).
 
 
 38
 Like attorneys' fees, a request for costs is a collateral matter "uniquely separable from the cause of action to be proved at trial." White v. New Hampshire Dept. of Employment Sec., 455 U.S. 445, 452 (1982).
 
 
 39
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3